

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. O. J. S. Ellingson
General Manager
Texas Prison System
Huntsville, Texas

Dear Sir:

Opinion No. O-929
Re: The status of a convict,
absent from the penitentiary
under the facts stated, is
that of an escaper.

Your letter of recent date addressed to this office reads as follows:

"I quote my letter of November 25, 1938 to Mr. E. A. Seale, Chief Clerk of the Bureau of Records and Identification, which is self-explanatory:

"'The above inmate's long form dated November 19, 1938 shows he was released on Bench Warrant to the Sheriff of Limestone County on December 17, 1937 and returned from this Bench Warrant to Huntsville on November 15, 1938.

"'This inmate in an interview with the Classification Department on November 21, 1938 '. . . that approximately five days after he was released on bench warrant to Limestone County on 12-17-37 he was released to the Department of Public Safety at Austin, Texas . . . as a mechanic for the Department of Public Safety . . . that for two months of this time he was carried on the payroll as a mechanic at $75.00 per month . . . that during a part of this ten months period he lived with his wife and family at 1207 West 34th Street in Austin . . . that it was decided that it was best for him to return to the Texas Prison System after the Arthur Huey case had



Mr. O. J. S. Ellingson, Page 2

received so much publicity and that it was possible that he might return to work for the Department in the event that he was successful in obtaining an early release by clemency.

"'Inasmuch as this prisoner was in the custody of the Sheriff only five days of the period that elapsed between December 17, 1937 and November 15, 1938, he should be credited on his sentence during this period only five days as we will have to consider the rest of the time the same as if he were an escape as we do not know of any right that the Sheriff or anyone else may have had to release this inmate to anyone except at the expiration of his term or through a reprieve, parole or some other form of clemency.'

"I would like to know if my ruling as General Manager is legally correct.

Respectfully,

(Signed)     O. J. S. Ellingson
             General Manager

OJSE:wr

P.S.  I also enclose full copy of his classification report which is attached hereto for any other information you may desire regarding his interview with our Classification Department."

In the case of Ex Parte Lowe, 94 Tex. Crim. Rep. 307, the Court of Criminal Appeals said:

"We know of no statute in terms directing the issuance of the warrant in question, but at common law and in practice, a warrant issued from the bench or court for the arrest of a party is denominated a 'bench warrant'.  Webster's Dict.  See also Cyc. of Law & Prac. Vol. 12, p. 343.  It is the writ used to compel the attendance in cases of contempt committed out of court (Cyc. Vol. 40, p. 2163.)  It is also the writ used to bring a convict confined in the penitentiary to trial in another case.  See Hernandez v. State,

4 Texas Crim. App. 425; Gaines v. State, 53 S.W.
Rep. 623; Washington v. State, 1 Texas Crim. App.
647; Ex Parte Jones, 38 Texas Crim. Rep. 142."

While you do not state for what purpose the bench
warrant was issued, we must presume that it was issued by a
Court or Judge commanding the General Manager or Warden of
the Texas Prison System to deliver the custody of the named
convict to the officer named in the warrant and commanding
the officer to bring said convict before the issuing authority
for the purpose stated in the warrant. In obedience to the
warrant, the convict was released from the penitentiary by
delivering him to the Sheriff of Limestone County.

It is made to appear that said sheriff, about five
days after he obtained custody of the convict, released him
to the Department of Public Safety of the State of Texas.
By what authority he was so released is not shown. But from
the statements made by the convict to the penitentiary offi-
cials after his return to the penitentiary, we infer it was
at the request of that Department; that the Department held
no bench warrant for the convict; but desired to use him as
an "undercover man" in the apprehension of other criminals.
A representative of the Department, familiar with all of the
facts concerning the release of the convict to the Department
by the Sheriff, has advised the writer that the convict was
released to the Department without the formality of legal
process. It is undisputed that the convict had received no
form of clemency from the Governor which would excuse his ab-
sence from the penitentiary.

What the convict did and was permitted to do after
he was released by the Sheriff to the Department up to the
time he was returned to the penitentiary is stated in your
letter and in the Bureau of Classification's report on this
convict attached thereto.

In view of all the facts and circumstances therein
stated, it may be said that the convict was an escape from
the time he was released by the sheriff until he was received
at the penitentiary, a period of nearly eleven months.

There are several kinds of escape recognized by our
statutes and courts. Articles 318, 318a, 319, 320, 321, 322
Vernon's Penal Code, and cases there cited; 17 Tex. Jur. p. 57

Mr. O. J. S. Ellingson, Page 4

et seq. These statutes and authorities pertain more to officers, their duties and liabilities than to the subject of what constitutes an escape.

An escape may be made in several different ways. The elements of escape are stated in 10 R.C.L. pp. 579, 580, as follows:

"Elements of Escape.- Escape, prison breaking and rescue have in common one purpose and that is the regaining by a person in the custody of the law of his unrestrained freedom. They differ, however, in the method by which that freedom is attained. The escape may be defined to be the voluntary departure of a person without force from the lawful custody of an officer or from any place where he is lawfully confined. It is also the deliverance of a prisoner who is lawfully imprisoned before he is entitled to such deliverance by law. Escapes are sometimes classified as actual and constructive, negligent and voluntary. A constructive escape takes place when the prisoner obtains more liberty than the law allows although he still remains in confinement. Voluntary escape has been defined by statute to consist in voluntarily suffering, permitting or conniving at the escape of a prisoner from custody or permitting him to go at large by the officer having lawful custody of him. It is not necessary that the officer do this with the intent to save the prisoner from trial or the execution of a sentence, and therefore such intent is not one of the elements constituting the offense. An escape in law has two separate meanings. The one involves the act of the prisoner, the other the act of the officer having him in custody. When the prisoner goes away from his place of lawful custody, the escape is the act of the prisoner; but when the prisoner is allowed to leave his place of confinement, either negligently or voluntarily, by the officer having him in custody, the escape is the act of the officer. In either event, whether a person under lawful arrest and restrained of his liberty evades such arrest and restraint through his own act or by sufferance of the officer, and goes at large before delivered by due course of law, an escape is committed."

It is our opinion that the convict Van Thurman, No. 85961, should be considered as on escape from the time he was released by the Sheriff of Limestone County until he was received back at the penitentiary.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Bruce W. Bryant
Assistant

BWB:BBB

APPROVED OPINION COMMITTEE
BY B.W. CHAIRMAN

APPROVED JUN 24, 1939

ATTORNEY GENERAL OF TEXAS